**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:12-cv-02517-RBJ-MEH

JOSHUA R. NOWLAN,

    Plaintiff,

  v.

CINEMARK, USA, INC., d/b/a CENTURY AURORA 16,

    Defendant.

## MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant, Cinemark, USA, Inc. ("Cinemark"), through its attorneys, Taylor|Anderson, LLP, hereby respectfully moves this Court to enter an order dismissing the Complaint on the ground that it fails to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

The essence of the Complaint is that Cinemark "should have known" that James Holmes would commit a mass murderous assault in the Century 16 Theatre (the "Theatre") on July 20, 2012. Complaint, ¶ 48. Never mind that federal, state and local law enforcement entities, trained in anticipating criminal conduct and armed with extensive resources, did not foresee – and would not be expected to foresee – Mr. Holmes' criminal conduct;[1] that family members and friends who knew him personally and for multiple years did not foresee it; that a treating psychiatrist apparently did not

---

[1] By all indications, law enforcement responded valiantly to the calls for help.

foresee it; that personnel at the University of Colorado, who interacted with him regularly, apparently did not foresee it; that firearm and ammunition manufacturers and suppliers, who provided him with the means for mass murder, did not foresee it; that the studio that distributed the film did not foresee it; and that adult patrons in the Theatre on the night in question, some of whom accompanied young children under their care, did not foresee it.

Instead, in Plaintiff's view, it is the people employed by Cinemark – people who had never met the mass murderer and who are not trained in law enforcement or criminal pathology – who had the legal obligation to foresee that he would commit this shocking criminal act and, because they allegedly should have foreseen it, should have had in place measures that may have prevented it.  In other words, Plaintiff invites this Court to find that Cinemark, and only Cinemark, had the duty and burden to foresee this murderous assault and prevent it. This invitation should be politely declined, as the fault here lies entirely with the killer.

In trying to establish that Cinemark should have foreseen this monstrous crime, Plaintiff alleges no prior murderous mass assault in the Theatre or in any other Cinemark theatre, much less one by an individual who left and returned through an exit door.  Nor does he allege that Mr. Holmes' behavior or conduct in the Theatre before his criminal act gave Theatre personnel any indication of his intentions.  Absent such allegations, Plaintiff's claims against Cinemark are grounded in nothing more than allegations that a random unbalanced individual randomly chose this theatre on this random night at this

random time to randomly murder and injure other human beings. Random acts, by very definition, are not legally foreseeable.

Suffice it to say that merely because the Theatre was the unpredictable choice by Mr. Holmes for his rare criminal act is insufficient, as a matter of law, to state a claim against Cinemark for damages for this horrible tragedy. Indeed, it is a basic premise of tort law in this country, and has been since the seminal decision by Justice Benjamin Cardozo in the 1928 opinion in *Palsgraf v. Long Island Railroad Co.*, 248 N.Y. 339, 162 N.E. 99 (1928), that a tort defendant is not responsible for a consequence that is merely possible, but only for one which is probable based on previous or usual experiences.

The Colorado Supreme Court is in accord, having held that foreseeability is only "whatever is likely enough in the setting of modern life that a reasonably thoughtful person would take account of it in guiding practical conduct." *Taco Bell, Inc. v. Lannon,* 744 P.2d 43, 48 (Colo. 1987). Once again, Plaintiff alleges no prior mass murderous assaults at this or any other Cinemark theatre that would support a reasonable conclusion that Cinemark should have known that one was "likely to occur." *Id.* The wise and articulate words of the Honorable Justice Don Ross Work, in *Lopez v. McDonald's Corp.*, 238 Cal. Rptr. 436, 445 (Cal.App.4th Dist. 1987), where James Huberty murdered 21 people and injured 19 more in a McDonald's restaurant in San Ysidro, California, are directly on point:

> [T]he likelihood of this unprecedented murderous assault was so remote and unexpected that, as a matter of law, the general character of McDonald's nonfeasance did not facilitate its happening. Huberty's deranged and motiveless attack … is so unlikely to occur in the setting of modern life that a

3

>reasonably prudent business enterprise would not consider its occurrence in attempting to satisfy its general obligation to protect business invitees from reasonably foreseeable criminal acts.

As purported support for his contention that a mass murderous assault was legally foreseeable by Cinemark (and Cinemark alone), Plaintiff alleges that there were "previous disturbances, incidents, disruptions and other criminal activities [that] had taken place at or near the property of the theatre," including "at least one shooting, involving gang members" and "assaults and robberies."[2]  Complaint, ¶¶ 5 and 8.  In so alleging, Plaintiff misapprehends the law of legal foreseeability, and urges this Court to do the same.  The linchpin of foreseeability is not prior instances of **any** crimes, but prior instances of crimes of this **nature** and **type.**  The proposition Plaintiff advances to this Court – that the purported occurrence of one isolated shooting and ordinary assaults and robberies are comparable in nature, type and degree to a murderous mass assault, and therefore predictive of it, is misguided on its face, as held by Justice Work in *Lopez*:

>[H]ere the proffered evidence does not portend disasters of this type. As McDonald's argues: '**To the extent it can be foreseen at all, such an attack, like a meteor falling from the sky, can occur in any neighborhood regardless of the crime rate.**'  Rather the predominantly theft-related character of the crimes is simply probative of the foreseeability of such crimes, more precisely defining its duty to provide protective measures designed to deter theft-related and ordinary criminal conduct (i.e., vandalism).  In comparison, not only was Huberty's crime not theft-related, but the narrow focus on

---

[2] The allegation of a gang shooting at the Theatre is false.  Prior to July 20, 2012, there had been no shooting of any kind at the Theatre.  Regardless, for purposes of a motion under Fed. R. Civ. P. 12(b)(6) the allegations in the Complaint must be accepted as true.  Even operating under the assumption that a gang shooting had occurred at the Theatre, such an event would be insufficient to make a madman's mass murder foreseeable to the Theatre.

> slaughter and Huberty's obvious suicidal motive are unrelated to the area's general crime rate **as a matter of law**.

*Lopez*, 238 Cal. Rptr. at 445 (emphases added).

"Hard cases make bad law" is a well-known legal maxim, first articulated in the opinion in *Winterbottom v. Wright*, (1842) 152 Eng. Rep. 402:

> This is one of those unfortunate cases – in which, it is, no doubt, a hardship upon the plaintiff to be without a remedy but by that consideration we ought not to be influenced. Hard cases, it has frequently been observed, are apt to introduce bad law.

Cinemark respectfully requests that this Court refrain from making this case a 21st century example of this long-standing maxim. It would be bad law if this Court held that Plaintiff states a claim for relief under the Colorado Premises Liability Act on grounds Cinemark "should have known" of the likelihood of a mass murderous assault based on allegations of fundamentally different crimes in the Theatre or in the area. In addition, such a holding would place an intolerable financial burden on all private business entities who serve the public if they are required to predict the unpredictable criminal mind and prevent the unpreventable criminal act.

In sum, Plaintiff fails to state a claim against Cinemark upon which relief can be granted because he does not allege, indeed could not allege, facts that support a reasonable conclusion that Cinemark knew or should have known that the criminal act at issue would occur. The people at Cinemark, like people across this country, are horrified, shocked, and deeply saddened by the senseless deaths and injuries caused by Mr. Holmes' criminal act. The Theatre's employees on the night in question, who reacted

bravely to the unexpected onslaught, are particularly affected. However, it is legally improper, and grossly unfair, to place on a private business entity operated by private citizens the legal obligation to foresee the patently unforeseeable conduct of the criminally unbalanced, most particularly where the criminal act is random and unprecedented in its business activities.  Indeed, if the law was that private business entities must foresee unlikely and unpredictable criminal conduct, there would be no reasonable limitations or boundaries on the liabilities of entities that provide desirable events, products, and services.

For the reasons stated herein, the Complaint should be dismissed, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.

## STATEMENT OF PERTINENT FACTS

In the context of this Rule 12(b)(6) motion, the pertinent facts are straightforward. Plaintiff alleges that there were various criminal events in the area of the Theatre or at the Theatre itself prior to the July 20 shooting.  Complaint, ¶¶ 5 and 8.  Plaintiff alleges further that, because of the previous criminal events in the area of the Theatre and at the Theatre itself, Cinemark "knew or should have known of the dangers and risks" of a mass murderous assault of the type committed by Mr. Holmes.  Complaint, ¶ 48.  Finally, Plaintiff alleges that Cinemark, because it did not foresee and take measures to prevent the mass murderous assault, "breached its duties as a landowner under the PLA [the Colorado Premises Liability Act, C.R.S. § 13-21-115 (the "Act").  These allegations are insufficient to state a claim for relief as a matter of law.

## ARGUMENT

**I.  THE PREMISES LIABILITY ACT (THE "ACT") IS PLAINTIFF'S EXCLUSIVE REMEDY UNDER COLORADO LAW, AND UNDER IT, PLAINTIFF MUST ESTABLISH THAT THIS MASS SHOOTING WAS FORESEEABLE**

At the outset, the Court should dismiss Plaintiff's negligence claim (the Second Claim for Relief in Plaintiff's Complaint). Plaintiff mistakenly asserts a claim for common law negligence in addition to a claim under the Act. But the Act is the exclusive remedy for injuries sustained on a landowner's property. *Lombard v. Colo. Outdoor Educ. Ctr., Inc.*, 187 P.3d 565, 574 (Colo. 2008).

The pertinent portion of the Act reads as follows:

> In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of the property, or activities conducted or circumstances existing on the property, the landowner shall be liable **only** as provided in subsection (3) of this section.

C.R.S. § 13-21-115 (emphasis added).

In turn, Subsection (3) of the Act imposes duties on landowners depending upon the classification of the plaintiff as a trespasser, licensee or invitee. Where, as here, the plaintiff is an invitee, he or she may only recover "for damages caused by the landowner's unreasonable failure to protect against dangers of which he actually knew or should have known." C.R.S. § 13-21-115(3)(c)(I). Thus, the threshold question for Plaintiff's claim under the Act is whether a mass shooting was a danger of which the Theatre actually knew or should have known.

Because Plaintiff does not allege that Cinemark "knew" a mass murderous assault would occur, the issue before this Court is whether Cinemark "should have known" it would occur – in other words, whether Cinemark had constructive knowledge that it would occur. The "should have known" test is synonymous with the "foreseeability test," which has been a cornerstone of American tort law since the 1928 decision in *Palsgraf*.In sum, where an injury-causing act is legally unforeseeable, constructive knowledge of the act does not exist as a matter of law and logic.

## II. THIS MASS MURDEROUS ASSAULT WAS UNFORESEEABLE AS A MATTER OF LAW

In his effort to state a valid claim against Cinemark arising from the mass murderous assault – or, more particularly, to allege sufficient facts to show that Cinemark "should have known" of (*i.e.,* foreseen) the likelihood of this crime, Plaintiff alleges that there were "previous disturbances, incidents, disruptions and other criminal activities [that] had taken place at or near the property of the theatre," including "at least one shooting, involving gang members" and "assaults and robberies." Complaint ¶¶ 5 and 8. In the framework of a legal argument, Plaintiff submits to this Court that these crimes are comparable to and predictive of a mass murderous assault and, therefore, Cinemark should have foreseen its likelihood and taken measures to prevent it. This is incorrect as a matter of law.

Foreseeability is not premised on prior instances of **any** crimes, but prior instances of crimes of the **nature** and **type** at issue. In the Summary of Argument above, Cinemark quotes from the articulate words of Justice Work in *Lopez*, where he stated that

the evidence of prior criminal conduct does not "portend disasters of this type" and that "the narrow focus [of the killer] on slaughter" is "unrelated to the area general crime rate **as a matter of law."** *Lopez*, 238 Cal. Rptr. At 445 (emphasis added).[3]

Justice Work's apt words are not simply a matter of his opinion, but reflect the basic tenet of tort law that a tort defendant is not responsible for a consequence that is merely possible, but only for one that is probable or likely based on previous or usual experiences. *See, e.g., Taco Bell,* 744 P.2d at 48 (in the words of the Colorado Supreme Court, "whatever is likely enough in the setting of modern life that a reasonably prudent person would take into account of it in guiding practical conduct.").

In sum, because the extraordinary mass murderous assault at issue here is patently dissimilar in nature, type, and degree from the crimes alleged in the Complaint, the prior occurrence of such crimes is insufficient, as a matter of law, to survive this Rule 12 (b)(6) motion to dismiss.

## **CONCLUSION**

If the history of the fortunately rare mass murders in this country has taught us anything, whether committed by the motiveless unbalanced individual or the terrorist, it is that they are random. From places as diverse as a McDonald's in San Ysidro, California, a federal building in Oklahoma City, Oklahoma, twin towers in New York City, a movie theatre in Aurora, Colorado, a college campus in Virginia, and an army

---

[3] Courts in many jurisdictions have not hesitated to find that criminal conduct is unforeseeable as a matter of law where the prior crimes at the defendant's property were too dissimilar to place the defendant on notice of the danger posed by violent crime. However, Cinemark respectfully refrains from including a string cite, in accordance with the Court's Practice Standards.

base in Texas, the common denominator is that they were unanticipated and unpredictable, even by the most advanced law enforcement entities in the world. It would be patently unfair, and legally unsound, to impose on Cinemark, a private business in the entertainment industry, the duty and burden to have foreseen and prevented the criminal equivalent of a meteor falling from the sky. Thus, even accepting the allegations in the Complaint as true, Plaintiff cannot state a claim that anyone other than Mr. Holmes, the irrational killer, is responsible for the consequences of his criminal conduct.

For these reasons, Cinemark respectfully moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to enter an order dismissing the Complaint, on the ground that it fails to state a claim upon which relief can be granted as a matter of law.

Dated this 27th day of September, 2012.

Respectfully submitted,

*s/Kevin S. Taylor*
Kevin S. Taylor, Esq.
Kyle Seedorf, Esq.
John M. Roche, Esq.
Amanda W. Wiley, Esq.
Taylor|Anderson, LLP
1331 Seventeenth Street, Suite 1050
Denver, CO  80202
Telephone:  (303) 551-6660
Facsimile:  (303) 551-6655
Email: ktaylor@talawfirm.com
         kseedorf@talawfirm.com
         jroche@talawfirm.com
         awiley@talawfirm.com
*Attorneys for Defendant*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing MOTION TO DISMISS was served by email, via the CM/ECF system, on this 27th day of September, 2012, upon the following:

William L. Keating, Esq.
Christina M. Habas, Esq.
Michael O'Brien Keating, Esq.
Deirdre E. Ostrowski, Esq.
KEATING, WAGNER, POLIDORI & FREE, P.C.
1290 Broadway, Suite 600
Denver, CO  80203
bkeating@keatingwagner.com
chabas@keatingwagner.com
mkeating@keatingwagner.com
deo@keatingwagner.com

*s/Kevin S. Taylor*
Kevin S. Taylor, Esq.
Kyle Seedorf, Esq.
John M. Roche, Esq.
Amanda W. Wiley, Esq.
Taylor|Anderson, LLP
1331 Seventeenth Street, Suite 1050
Denver, CO  80202
Telephone:  (303) 551-6660
Facsimile:  (303) 551-6655
Email: ktaylor@talawfirm.com
       kseedorf@talawfirm.com
       jroche@talawfirm.com
       awiley@talawfirm.com